**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETRILLO & POWELL, PLLC<br><br>5335 Wisconsin Ave., NW, Suite 440<br>Washington, D.C. 20015<br><br>Plaintiff,<br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br><br>Centers for Medicare and Medicaid Services<br>7500 Security Boulevard<br>Baltimore, MD 21244<br><br>Defendant. | Civil Action No. ________ |

## COMPLAINT FOR INJUNCTIVE RELIEF

This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking injunctive relief for the failure of the U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services, to provide agency records in response to proper requests.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

2. Plaintiff, Petrillo & Powell, PLLC, is a law firm located in the District of Columbia. It is the requester of the records.

3. Defendant U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS") is an agency of the United States, and it has possession of and control over the records that Plaintiff seeks. The component of the Department of Health and Human Services involved in this action, CMS, is located in Baltimore, Maryland.

## FACTUAL BACKGROUND

### The FOIA Requests

4. By letters dated and mailed January 5, 2015, Plaintiff submitted two separate requests to the CMS FOIA officer in Baltimore, Maryland.

5. One request sought 15 categories of records (Exhibit A), and specifically asked that records be released as they became available.

6. The other request sought 10 categories of records (Exhibit B), and specifically asked that records be released as they became available.

7. The requests both seek records concerning the Medicare Advantage program administered by CMS. Generally, the requests seek records concerning the payment methodologies underlying CMS reimbursement to Medicare Advantage Organizations ("MAOs"), specifically (1) coding, validation, and submission of data used to compute risk adjustment payments, (2) requirements associated with MAOs' submissions of risk adjustment certifications, and (3) guidance documents related to several of CMS's proposed rules and regulations governing the Medicare Advantage program.

**Overview of the Medicare Advantage Program**

8. Given the breadth of the Medicare Advantage program and the years of CMS rulemaking related to Medicare Advantage, responsive records surely exist. In 2003, Medicare Managed Care was renamed Medicare Advantage, pursuant to the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Public Law 108-173 § 201, 42 U.S.C. § 1395w-21. Medicare Advantage is part of the federal Medicare program under which private health insurance plans agree to assume the risk of providing health benefits to Medicare beneficiaries, whose costs of care would otherwise be borne by CMS, in exchange for fixed monthly payments from CMS that vary in amount based, in part, on the relative health status of the plan's beneficiaries as compared to the health status of an average CMS beneficiary.

9. CMS calculates the payment for each MAO beneficiary based on various "risk adjustment data," such as a beneficiary's demographic profile and the enrollee's health status, as reflected in the medical diagnosis codes associated with the beneficiary's health profile and the care that he or she receives. MAOs are responsible for reporting these diagnosis codes to CMS for the tens of millions of beneficiaries they serve.

10. In order to process the immense amount of diagnosis data that MAOs submit and to accurately compensate MAOs for the care they provide, the government creates thousands of complicated rules that the MAOs must follow to get paid for providing insurance coverage to their beneficiaries. The process of promulgating rules and regulations creates numerous records in the form of input and comments, and other related documents (*See* Exhibit A, Requests 1, 6, 7, 10). Moreover, the rules obligate MAOs to submit voluminous data and annual risk adjustment certifications (*See* Exhibit

B, Request 9), which are surely stored somewhere at CMS. MAOs also communicate with CMS in an attempt to understand complex risk adjustment rules through, for example, coding inquiries that Medicare Advantage plans submit to CMS and to which CMS responds (*See* Exhibit A, Requests 1, 3, 5, 7). These communications must also be on record at CMS.

11. In order to verify some of the diagnosis code data it receives from MAOs, CMS conducts Risk Adjustment Data Validation audits ("RADVs") through which it validates MAOs' medical record coding and diagnosis submissions. (*See* Exhibit B, Requests 5-8). The process of conducting RADVs creates numerous records and voluminous correspondence between CMS and MAOs that, presumably, CMS has retained. Finally, in furtherance of its efforts to evaluate MAOs' coding accuracy, CMS announced its intention to calculate a fee-for-service error rate more than five years ago (*See* Exhibit A, Requests 12-15). CMS must have made some progress in calculating the error rate in the past five years and thus must have some relevant responsive records. All these records exist in the offices of CMS, whose function includes administering the Medicare Advantage program.

**CMS Failed to Produce Any Records in Response to the FOIA Requests**

12. After several inquiries, CMS acknowledged the requests orally on June 15, 2015 and in writing on August 24, 2015. (Exhibit C). CMS assigned Control Number 060420157021 to the request attached as Exhibit A, and Control Number 060420157024 to the request attached as Exhibit B.

13. The CMS FOIA specialist has orally stated that no responsive documents were found. However, CMS has never responded formally or in writing to the requests.

14. By letter dated January 5, 2017 (Exhibit D), Plaintiff informed CMS that, in the absence of a written response, the requests were considered denied, and that legal action would be filed if there was no response within 10 business days. CMS has not responded to this letter.

## CAUSE OF ACTION

15. Upon information and belief, at least some records responsive to the requests exist, and would have been discovered in a reasonable search before the filing of this Complaint.

16. Pursuant to FOIA, Plaintiff has a right of access to responsive records, or portions of records, for which there is no sufficient exemption from disclosure.

17. Pursuant to FOIA, Plaintiff has a right to a formal written determination that no responsive records exist, if none can be found after a reasonable search.

18. Because CMS has failed to provide a response within the applicable time limits of FOIA, Plaintiff has exhausted its administrative remedies under 5 U.S.C. § (a)(6)(C)(i).

19. Plaintiff is entitled to injunctive relief compelling the release and disclosure of the requested agency records, and a response if none exists.

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a) Order Defendant to conduct a reasonable search and make available to Plaintiff all records responsive to the requests, or portions thereof, to the extent that they are not exempt from disclosure, and to notify Plaintiff that there are no records responsive to a request, if none can be found after a reasonable search;

(b) Award Plaintiff its costs and reasonable attorneys' fees in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(c) Grant such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

By: /s/ Joseph J. Petrillo

Joseph J. Petrillo (184986)
PETRILLO & POWELL, PLLC
5335 Wisconsin Ave., NW, Suite 440
Washington, D.C. 20015

*Attorneys for Plaintiff*

Dated: April 14, 2017